FARLEY, Judge,
dissenting:
*59 In my view, 38 C.F.R. § 20.201 was promulgated by the Secretary pursuant to his lawful authority and its substantive terms are fully consonant with the spirit and the letter of the scheme of title 38, U.S.Code. Therefore, I cannot join with the majority in striking down that regulation. Nor can I agree to a reversal of the BVA decision which properly interpreted the regulation and applied it to the facts presented in this matter. Thus, I respectfully dissent.
Section 7105 of title 38, U.S.Code, provides that
“Mppellate review will be initiated by a notice of disagreement ... [which] shall be filed within one year from the date of mailing of notice of the result of initial review or determination. Such notice ... must be in writing and be filed with the activity which entered the determination with which disagreement is expressed.... Notices of disagreement ... must be in writing and may be filed by the claimant, the claimant’s legal guardian, or such accredited representative attorney, or authorized agent. If no notice of disagreement is filed in accordance with this chapter within the prescribed period, the action or determination shall become final.... ”
The term “notice of disagreement” is not defined further either by section 7105 or by section 101 of title 38 U.S.Code, which provides the definitions “[f]or the purposes of this title.” However, pursuant to 38 U.S.C. § 501(a),
The Secretary has authority to prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and are consistent with those laws, including—
(2) the forms of application by claimants under such laws....
To ensure that his agencies of original jurisdiction would be able to facilitate the Congressional mandate that “[ajppellate review will be initiated by a notice of disagreement,” the Secretary, in the exercise of this § 501(a) authority, promulgated 38 C.F.R. § 20.201. In defining the term “notice of disagreement,” the Secretary determined that, “[w]hile special wording is not required, the Notice of Disagreement must be in terms luhich can be reasonably construed as disagreement with that determination and a desire for appellate revieio.” (Emphasis supplied.) To my mind, such a requirement is both consistent with the statutory scheme and reasonable as a matter of administrative precaution for, as a decade of experience with judicial review has demonstrated, an agency of original jurisdiction receives innumerable communications from claimants and the claimants’ representatives. The RO must be able to reasonably ascertain a claimant’s intention in sending his or her communication to be able to determine what course of action is required by law, and such determinations have to be consistent from RO to RO throughout the nation. The Secretary, in promulgating the regulation, merely articulated that an NOD must be capable of being “reasonably construed” as asking for appellate review so that adjudication officers would be on notice to initiate the review process. This provision is consistent with § 7105 and it fulfills the purpose of an NOD in the process set up under title 38 and as set forth in the statute and its legislative history. See Meeks v. West, 216 F.3d 1363, 1366-67 (Fed.Cir.2000) (“[S]tatutory interpretation is a holistic endeavor that requires consideration of a statutory scheme in its entirety”; when interpreting a statute the court should “look to the provisions of the whole law, and to its object and policy.” (internal citations omitted)).
As the majority noted, when reviewing a statute, if the Congressional intent is clear, the matter is ended. “If, however, the court determines Congress has not directly addressed the precise question at issue ... if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency’s answer is based on a permissible construe *60 tion of the statute.” Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (footnotes omitted). In a footnote in Chevron, the Court noted that:
the court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding.
Id. at 843 note 11, 104 S.Ct. 2778. An agency’s administration of a program created by Congress “necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.” Id. at 843, 104 S.Ct. 2778 (quoting Morton v. Ruiz, 415 U.S. 199, 231, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974)). Where “Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation.” These types of regulations are controlling “unless they are arbitrary, capricious, or manifestly contrary to the statute.” Id. at 843-44, 104 S.Ct. 2778. Where the “legislative delegation to an agency on a particular question is implicit rather than explicit ... a court may not substitute its own construction of a statutory provision for a reasonable interpretation” made by an agency. Id. at 844, 104 S.Ct. 2778.
In Chevron, the Supreme Court noted that an agency’s construction of a statutory scheme should be given “considerable weight” and that where the meaning of a statute involves “reconciling conflicting policies, and a full understanding of the force of the statutory policy” (id.), if the “choice represents a reasonable accommodation of conflicting policies that were committed to the agency’s care by the statute, [the Court] should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned.” Id. at 845, 104 S.Ct. 2778 (quoting United States v. Shimer, 367 U.S. 374, 382, 383, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961)). The Federal Circuit, in reviewing a decision from this Court, recently noted that where the “statute is silent or ambiguous about a matter, the court gives deference to interpretations of the agency charged with the duty to administer it.” Meeks, 216 F.3d at 1366; see also Nations-Bank v. Variable Annuity Life Ins. Co., 513 U.S. 251, 256, 115 S.Ct. 810, 130 L.Ed.2d 740 (1995) (“It is settled that courts should give great weight to any reasonable construction of a regulatory statute adopted by the agency charged with the enforcement of that statute.”) (quoting Clarke v. Securities Industry Assn., 479 U.S. 388, 403-04, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987) (quoting Investment Company Institute v. Camp, 401 U.S. 617, 626-27, 91 S.Ct. 1091, 28 L.Ed.2d 367 (1971))).
Congress did not specifically address the question this appeal raises: what constitutes an NOD? Although it can be concluded from the language of § 7105 and the term “notice of disagreement” itself that an NOD is a written communication expressing disagreement with an RO decision, no further guidance of a substantive nature has been offered by Congress. Whereas the majority sees this statutory void as somehow preventing the Secretary from promulgating a substantive regulation, I believe it is more properly viewed as a gap which not only could but should be filled by regulation under the Secretary’s authority and responsibility to promulgate all rules and regulations that are necessary for carrying out the laws he administers. This delegation specifically included the forms of applications by claimants. 38 U.S.C. § 501(a)(2).
Just like the statutory language, the legislative history does not help to answer the question of what an NOD must contain. The portion of the legislative history cited by the majority does not define an NOD but describes its purpose, i.e., “to fully *61 prepare and present [the veteran’s] appeal.” S.Rep. No. 1843, 1962 U.S.Code Cong. & Admin.News 2570, 2577; Ante at 57. Since nothing in the statute or its legislative history speaks to what should be contained in an NOD, the only question is whether the guidance provided by the Secretary in 38 C.F.R. § 20.201 is a “reasonable interpretation” of § 7105, and if the regulation “represents a reasonable accommodation of conflicting policies that were committed to the [Secretary’s] care by [title 38].” Chevron, 467 U.S. at 845, 104 S.Ct. 2778. I believe it is and it does.
The majority purports to find support for its views in Tomlin v. Brown, 5 Vet.App. 355 (1993) but its analysis cannot withstand scrutiny. In Tomlin the portion of the regulation at issue was that part which required that an NOD be a “written communication.” The Court found that the statements of the appellant’s representative at an RO hearing which had been transcribed satisfied the requirement that an NOD be in writing. In my view, Tomlin stands only for the proposition that, to the extent that 38 C.F.R. § 20.201 may be read to require the claimant or the claimant’s representative’s to actually be the one to write the communication expressing disagreement, such a requirement would be beyond the Secretary’s authority. The issue presented in this appeal was neither presented nor discussed in Tomlin. Undaunted by this apparent hurdle, the majority concludes that “[t]he Court in Tomlin thus, by implication, read out of the regulation any added requirement of an expression of a desire for appellate review.”- Ante at 55-56 (emphasis supplied). I cannot find in Tomlin the “implication” the majority here found, but even if I were able to catch a fleeting glimpse of one, I could not attach to it the significance the majority purports to discern. Nor can I agree with the majority’s finding that Tomlin determined once and forever “[t]he clarity and completeness of the statute” or that it can stand for as large a “proposition” as the majority here attempts to lay down. Ante at 54-55. If the import of the majority’s holding is that the Court, by quoting only a part of a regulation, effectively strikes down the omitted sections of that regulation, then through the decisions of this Court large segments of the VA regulatory scheme must already have been eviscerated.
The portion of the regulation at issue here does not run afoul of the maxim set forth in Tomlin, and relied upon by the majority, that the Secretary by regulation cannot impose any specific technical requirements not authorized by the statute. Tomlin, 5 Vet.App. at 357. The provision that the terms of the NOD be capable of being construed as seeking appellate review imposes no such technical requirement. The regulation does not require certain words or phrases; in fact, it recognizes that “special wording is not required.” 38 C.F.R. § 20.201. As the statute makes clear, the NOD is a document filed to initiate appellate review and it is therefore reasonable for the Secretary to require that the communication filed by the claimant somehow indicate that appellate review is what he or she seeks. The majority asks the question how “can it be reasonable for the Secretary to require that every denied VA claimant must, at the time he or she files an NOD, express a desire for BVA review?” Ante at 55-56. The better question, given the nature of claims adjudication, the myriad pieces of correspondence, and the need for national consistency, is “how could such a requirement be unreasonable?” The answer is: the “desire for appellate review” provision of 38 C.F.R. § 20.201 is not unreasonable, and there is no basis in statutory or case law for striking that regulation as the majority does today. Mindful of the deference to be accorded an agency’s construction of a statute, I would find the subject regulation to be a “reasonable interpretation” of 38 U.S.C. § 7105. See Chevron, Meeks, and NationsBank, all supra.
In its decision, the majority points to the fact that the system of veterans benefits is *62 designed to be pro-claimant, invoking Judge Plager’s admonition in Barrera that a veteran’s right to judicial review be protected. Ante at 56-57. There is nothing in this regulation which is anti-claimant or which erects “a barrier to appellate review where none exists in section 7105.” Ante at 56. Congress has set forth certain procedures for obtaining judicial review and, as the majority must and has conceded, the initial requirement is a valid NOD. Section 20.201 is nothing more than “the formulation of policy and the making of rules” required of the Secretary in order to give form to the process leading to the judicial review mandated by Congress under the VJRA. See Chevron, 467 U.S. at 843, 104 S.Ct. 2778.
Turning to the facts, and presuming the continuing vitality of § 20.201, when determining whether a document constitutes an NOD, the Court looks at both the actual wording and the context in which the communication was written. Jarvis v. West, 12 Vet.App. 559, 561 (1999). The October 1994 DAV letter calls the RO decision “premature,” states the belief that “[further development ... would prove beneficial to fair evaluation of this veteran’s claim,” and “suggest[s] careful gleaning of the information from the Social Worker’s statement would give sufficient detail without delay to request thorough investigation.” R. at 228. The author of this “Memo to Rating Board” was an employee of the Disabled American Veterans, a recognized veterans service organization whose representatives are permitted to prosecute claims under the laws administered by VA. See 38 U.S.C. § 5902. That being so, it is reasonable to expect that the DAV is aware of the requirements for a valid NOD and for seeking appellate review of an RO decision under the pertinent statutes and regulations. The Board held that the DAV letter, while it may be construed to express disagreement with the RO decision, cannot be reasonably construed to express a desire for appellate review. Because I find no factual or legal error in that conclusion, I would affirm the BVA determination that the October 1994 DAV letter is not a valid NOD. Therefore, I respectfully dissent.